The United States Bankruptcy Court, Eastern District of New York, Located at The Alfonse M. D'Amato Courthouse, 290 Federal Plaza, Courtroom 960, Central Islip, New York 11722, in front of the Honorable Melanie L. Cyganowski, on
                    , 2005 at          (a.m./p.m.).

PRESENT: HON. MELANIE L. CYGANOWSKI

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

In Re:                                          Chapter 7
                                                Case No.: 804-82632-511
MICHAEL N. MOROKNEK,


                    Debtor.                     Hon. Melanie L. Cyganowski

-------------------------------------------------------------------X
VIVIAN MOROKNEK,

        Plaintiff,

    -against-                                   <u>ORDER TO SHOW CAUSE</u>

MICHAEL N. MOROKNEK,

        Defendant.
-------------------------------------------------------------------X

    Upon the reading and filing of the annexed affirmation of GLENN J. INGOGLIA, ESQ., dated, April 6, 2005, please make, VIVIAN MOROKNEK, and all other parties to this action show cause before this Court, at The United States Bankruptcy Court, Eastern District of New York, Located at The Alfonse M. D'Amato Courthouse, 290 Federal Plaza, Courtroom 960, Central Islip, New York 11722, in front of the Honorable Melanie L. Cyganowski, on

-1-

, 2005 at          (a.m./p.m.), or as soon thereafter as counsel can be heard why this Court should not make and enter an order granting the following:

(a)    Relieving Glenn J. Ingoglia, Esq., from further representing Plaintiff, VIVIAN MOROKNEK;

(b)    Staying the proceedings for ninety(90)days, or for such period of time as this Court deems just and proper, in order to allow VIVIAN MOROKNEK time to retain new counsel;

(c)    Granting Glenn J. Ingoglia, Esq., a retaining lien on VIVIAN MOROKNEK'S file currently in his possession;

(d)    Staying the hearing of Defendant's motion to dismiss from April 12, 2005, to the new date of                    , 2005;

(e)    Extending the trial date of this matter to the new date of , 2005;

(f)    For such other and further relief as this Court deems just and proper;

ORDERED, let service of a copy of this order together with the papers upon which it is granted be served upon the Plaintiff, VIVIAN MOROKNEK, at the address 11 Grove Place, Northport, New York 11768, by Overnight Express Mail, Certified Mail or Regular mail, on or before                    , 2005, be deemed good and sufficient service; and it is further

ORDERED, let service of a copy of this order together with the papers upon which it is granted be served upon the Debtor/Defendant, by serving a true copy upon his attorney, THE LAW OFFICES OF SCOTT R. SCHNEIDER, at his office located at 117 Broadway, Hicksville, New York 11801, by Overnight Express Mail, Certified Mail or Regular mail, on

-2-

or before                              , 2005, be deemed good and sufficient service; and it is further

ORDERED that all parties objecting to this motion, shall appear personally with their attorneys on the return date of this motion.

Dated:


                                                     _____
                                                     J.S.C.


Certified:

Glenn J. Ingoglia

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

In Re:                                                    Chapter 7
                                                          Case No.: 804-82632-511
MICHAEL N. MOROKNEK,


                          Debtor.                         Hon. Melanie L. Cyganowski


---------------------------------------------------------------X

VIVIAN MOROKNEK,

                          Plaintiff,

          -against-                                       **AFFIRMATION**
                                                          **IN SUPPORT**
MICHAEL N. MOROKNEK,

                          Defendant.

---------------------------------------------------------------X

GLENN J. INGOGLIA, ESQ. (GI 1655), an attorney duly admitted to practice law before the Courts of the State of New York and the Federal Courts of the Southern and Eastern Districts of New York, hereby affirms the following, upon information and belief, under the penalties of perjury:

1.      I represent the Plaintiff, VIVIAN MOROKNEK, Debtor's Spouse, and I submit this affirmation in support of this Order to Show Cause to be relieved as counsel.

2.      The attorney-client relationship between my client and I has broken down for several reasons:

(1) During the Course of my representation of the Plaintiff, she has sought the advice of others with regard to legal matters, which has resulted in conflict and

-4-

ever increasing difficulty when advising her;

(2) The Plaintiff has balked at the several settlement I have negotiated on her behalf, with her knowledge and consent, convincing me that I can no longer effectively represent her; and

(3) As a result of the last reason, the Plaintiff has blamed me rather than herself, for her financial situation and has now refused to pay me.

3. On or about April 20, 2004, the Debtor filed his Bankruptcy Petition.

4. Shortly, thereafter the Trustee, Marc Pergament, commenced an action against the Plaintiff, to force a sale of the marital residence the Plaintiff co-owned withe the Debtor. At the time of the Debtor's Bankruptcy filing, the Debtor and the Plaintiff were embroiled in a divorce action that had been commenced in September 2001.

5. Sometime after the Trustee's action, I commenced a Third-Party action on Plaintiff's behalf against the Debtor objecting to the discharge.

6. The Third Party action was severed from the Trustee's action and is now this adversary proceeding currently before the Court.

7. The Trustee's action has since been settled by way of Plaintiff purchasing Trustee's interest in the marital residence for the sum of $175,000.00.

8. I have been representing the Plaintiff since May 2004, just after the Debtor filed for Bankruptcy.

9. When the Plaintiff first consulted with me back at the end of April, beginning of May 2004, her husband, the Debtor, had just filed for bankruptcy, and been

found in contempt of court in the divorce action. But at that time there was an automatic stay in place.

10. At that time, the Plaintiff had paid her previous divorce lawyer $10,000.00 and owed him another $27,000.00.

11. She initially hired me to represent her to object to the Debtor's discharge and to vacate the automatic stay lifted so her divorce action with the Debtor could proceed.

12. The Stay was lifted as per my motion to this Court.

13. In August 2004, the client retained me to represent her in both the bankruptcy action and the divorce action. *Please see copy of the Retainer attached hereto as Exhibit "A."*

14. The terms of the agreement were that the Plaintiff would pay me $20,000.00 to handle both matters through trial. She assured me at the time that she did not have any means of income or support and would have to pay me over time. I believed the client and agreed to this arrangement.

15. The Retainer called for a down payment of $2,500.00 which was to be followed by monthly payments of $750.00 from the client's boyfriend, John Cobuzzi, and quarterly payments from the Plaintiff of $2,500.00, except for the last quarterly payment which was supposed to be $5,000.00.

16. At the time I was retained to handle the divorce, there was a pendente lite order in place, no depositions were done and the Debtor owed the Plaintiff somewhere in the neighborhood of $42,000.00 in arrears.

17. Since I started representing the client, all depositions have been completed and I negotiated a universal settlement ending all actions in State Court and Bankruptcy Court which would have put the client in a secure financial position. There were many more positive things with regard to these settlements but I am precluded from talking about them further at this time.

18. For months, with the client's knowledge and consent, I worked on settlement negotiations with all counsel who represented Debtor in both actions. I even negotiated with the client's former counsel to have him settle his claim for less.

19. In early 2005, I had heard a rumor that my client was seeking advice from a mutual acquaintance of ours who happens to be an attorney. This attorney does not practice family law, but my client appeared to be following her advice more than mine. I approached my client and this woman attorney and expressed my concerns about this, but never received an answer I was satisfied with.

20. In early February 2005, my client growing increasingly frustrated with the State Court adjourning the trial on three straight occasions demanded I file a motion for criminal contempt against the Debtor in the divorce action. At this time the Debtor was only days late with a mortgage payment, as was his custom since I was retained.

21. I advised my client, that in my opinion, such a motion would not be successful.

22. On February 8 or 9, 2005, the Plaintiff left across country on a business trip. She did not leave a number where she could be contacted directly. She told me

she would be back on February 24, 2005. I did not receive any communication from her or her boyfriend until approximately February 25 or 28, 2005.

23. I immediately asked them for a status as to whether or not the Debtor was paying the mortgage. On March 1, 2005, the client advised me that the Plaintiff had not paid the February or March mortgage, which was due March 1, 2005. I told the client's boyfriend to have the client come in my office in two days to sign an affidavit to go along with a motion for criminal contempt. Her boyfriend told me they would call back to make arrangements.

24. I had not heard from the client or her boyfriend for a day. When I called the boyfriend to inquire about the motion and my overdue payments for counsel fees and expenses, I first got first wind that my client was refusing to pay me what I was owed.

25. As of February 28, 2005, I was owed $750.00 by the boyfriend, John Cobuzzi. As of March 1, 2005, I was owed $2,500.00 by the client, Vivian Moroknek. I also requested that I be paid $191.00 I was owed for expenses. Mr. Cobuzzi assured me I would receive my expenses and his $750.00, but told me the client could only pay me $500.00 even though she had just returned from a two week long retail business trip.

26. When I questioned the client personally about this, she told me I should have made the motion to contempt months ago, and that was the reason she was in this financial mess, and that was the reason I was only going to get paid what I was.

27.    I reminded her that I accept credit cards, but she refused to put a payment on her card.

28.    I reminded her that she should borrow some more money as she did to purchase the Plaintiff's interest in the marital residence from the Trustee; she refused to do that as well.

29.    I asked Mr. Cobuzzi to make the balance of her payment for her, but he said he had no credit.  However, in the same breath he told me he had to make his own mortgage payments on a new home he just purchased with a mortgage.

30.    My client went as far as to tell me that if the Debtor paid the next month's fuel bill she would divert that money to me.  In other words, my client was making me wait for payment for services I provided, and it was dependent upon whether or not the Defendant made a payment to her.

31.    Even though, my bills equal in excess of $27,000.00 up to this point.  I always maintained to Mr. Cobuzzi and the client that I would see this matter through, because that is what I contracted to do.  *See copy of itemized bills for services since representing client in both divorce and bankruptcy actions attached hereto as Exhibit "B."*

32.    As long as my client and Mr. Cobuzzi met their obligations, I would meet mine.

33.    I can only put up with my client's antics so far.

34.    It is bad enough she wasted my time with the settlement negotiations and sought advice from an inexperienced attorney over mine, but I refuse to be blamed for a financial position I tried very hard to avert and warned her about; and not

being paid on top of it.

35.     I have gone above and beyond and honored my half of our agreement.

36.     For the above reasons, I believe I can no longer effectively represent my client.

37.     If the Court is unsatisfied with the reasons I have outlined above, I will be glad to provide more specific details, In Camera.

31.     No prior application for the same or similar relief requested herein has been made.

WHEREFORE, it is requested that this application be granted in its entirety, along with such other and further relief as this Court deems just and proper.

Dated:  Island Park, New York
         April 6, 2005

GLENN J. INGOGLIA, ESQ.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

In Re:                                                        Chapter 7
                                                              Case No.: 804-82632-511
MICHAEL N. MOROKNEK,


            Debtor.                                           Hon. Melanie L. Cyganowski


---------------------------------------------------------------X
VIVIAN MOROKNEK,

            Plaintiff,

    -against-                                                 AFFIRMATION

MICHAEL N. MOROKNEK,

            Defendant.
---------------------------------------------------------------X

GLENN J. INGOGLIA, ESQ. (GI 1655), an attorney duly admitted to practice law before the Courts of the State of New York and the Federal Courts of the Southern and Eastern Districts of New York, hereby affirms the following, upon information and belief, under the penalties of perjury:

1.     I did not become of the situation requiring relief by Order to Show Cause until March 30, 2005.

2.     On April 6, 2005, I held a conference call with your honor's part and Debtor's counsel, Scott R. Schneider, Esq., regarding this impending Order to Show Cause.

3.     My office will attempt to contact the Plaintiff via e-mail, letter, phone call and fax on April 7, 2005, regarding this impending Order to Show Cause.

4.    It is necessary to proceed by Order to Show Cause due to the impending hearing of Debtor's motion to dismiss which is scheduled for April 12, 2005.

5.    Your affirmant has filed and served written opposition to said motion, but feels arguing said motion may cause a conflict.

6.    Upon information and belief, the trial of this matter has been scheduled for September 2005.

7.    No prior application for the same or similar relief requested herein has been made.

WHEREFORE, it is requested that this application be granted in its entirety, along with such other and further relief as this Court deems just and proper.

Dated:  Island Park, New York
        April 6, 2005

GLENN J. INGOGLIA, ESQ.

EXHIBIT  A

# GLENN J. INGOGLIA

Attorney At Law
1461 Franklin Avenue
Garden City, New York 11530
www.gjilaw.com

Telephone: (516) 248-2095                                    Admitted to Practice Law
Facsimile:  (516) 248-2093                                    in the State of New York

May 27, 2004

Dear Vivian Moroknek and John Cobuzzi:

1. The purpose of this letter agreement is to confirm the terms and conditions under which my Law Firm will undertake to represent Vivian Moroknek from this day forward with regard to her pending Divorce action and Bankruptcy proceeding objecting to the attachment of her home as well as to the other discharges petitioned for by Michael Moroknek which pertain to Vivian Moroknek. My firm agrees to represent Vivian Moroknek in the above matters until they are both concluded, disposed or settled for the sum or $20,000.00 for counsel fees only. All expenses and fees will be billed to Vivian Moroknek ~~and John Cobuzzi~~ *and John Cobuzzi* and will be extra in addition to the counsel fees. I am not obligated to represent you with regard to any appeals.

2. Although I will be principally responsible for this engagement, it is anticipated that other Firm lawyers may become actively involved. Even though this is a "Flat Fee" retainer agreement, should any disputes arise, my firm has the right to bill you at a rate of $175.00 per hour for all lawyer services and $90.00 for all Legal Assistant services.

In addition to our fees, we will be entitled to payment or reimbursement for services such as photocopying, messenger service, ~~travel expenses, long-distance telephone, outgoing telecopying,~~ court costs and filing fees, ~~word processing, and secretarial overtime when necessitated by the exigencies of the client.~~ It may not be possible for the Firm to advance substantial fees of others, in which case such fees will be billed directly to you.

3. This will acknowledge receipt of a $2,500.00 payment from Vivian Moroknek towards the $20,000.00 total fee. The payment structure for the remaining $17,500.00 will be as follows:

    1) September 30, 2004 - John Cobuzzi will pay $750.00 to the Law Office of Glenn J. Ingoglia;

    2) October 31, 2004 - John Cobuzzi will pay $750.00 to the Law Office of Glenn J. Ingoglia;

3) November 30, 2004 - John Cobuzzi will pay $750.00 to the Law Office of Glenn J. Ingoglia;

4) December 1, 2004 - Vivian Moroknek will pay $2,500.00 to the Law Office of Glenn J. Ingoglia;

5) December 31, 2004 - John Cobuzzi will pay $750.00 to the Law Office of Glenn J. Ingoglia;

6) January 31, 2005 - John Cobuzzi will pay $750.00 to the Law Office of Glenn J. Ingoglia;

7) February 28, 2005 - John Cobuzzi will pay $750.00 to the Law Office of Glenn J. Ingoglia;

8) March 1, 2005 - Vivian Moroknek will pay $2,500.00 to the Law Office of Glenn J. Ingoglia;

9) March 31, 2005 - John Cobuzzi will pay $750.00 to the Law Office of Glenn J. Ingoglia;

10) April 30, 2005 - John Cobuzzi will pay $750.00 to the Law Office of Glenn J. Ingoglia;

11) May 31, 2005 - John Cobuzzi will pay $750.00 to the Law Office of Glenn J. Ingoglia;

12) June 1, 2005 - Vivian Moroknek will pay $5,000.00 to the Law Office of Glenn J. Ingoglia; and

13) June 30, 2005 - John Cobuzzi will pay $750.00 to the Law Office of Glenn J. Ingoglia;

~~You agree that we will have the right to request additional advances from time to time based on our estimates of future work to be undertaken.~~

4. Fees and expenses will be billed monthly and are payable within 10 days after the invoice date. ~~We reserve the right in our discretion to change the frequency of billing and the time for payment.~~ We also reserve the right in our discretion to terminate our services and resign the representation of Client in the event that any of our statements for fees and expenses remain unpaid (in whole or in part) after the due date for such statement and [5] days after we have notified Client in writing that we intend to resign if such statement is not fully paid. Client expressly agrees and consents to our right to terminate and resign as set forth in this paragraph.

5. Our engagement to represent you will be deemed to have terminated when we have completed the services contemplated by this letter or, if earlier, at any time that a period in excess of twelve months elapses during which you do not request and we do not furnish any billable services to you. ~~You agree to discharge me as your attorney when you are unable to replenish the retainer with one-half~~

the amount of the original retainer. Prior to your discharge, I will forward a 5-day notice letter to replenish the retainer. Should I not receive a retainer replenishment within those 5 days, you agree that I may be discharged as your attorney without making application to the Court to do so.

6. You agree that we may dispose of all files pertaining to each of the matters described above at any time after 5 years have elapsed after we have last performed services on such matter. Such disposal will be accomplished in a manner that will protect the confidentiality of such files. You reserve the right to request, at any time before disposal of files, copies of any materials contained in such files. You recognize that our lawyers may, in exercising their judgment while working on a matter, discard certain documents, such as interim drafts, the retention of which they do not believe to be significant to the protection of the client's interest.

We are pleased to have this opportunity to be of service to you.

Very truly yours,

GLENN J. INGOGLIA

By: _____

Enclosure

AGREED TO AND ACCEPTED:

_____
Vivian Morøknek

_____
John Cobuzzi

EXHIBIT  B

Law Office of

# GLENN J. INGOGLIA

104 Long Beach Road
Island Park, New York 11558
www.gjilaw.com

Telephone: (516) 432-0500
Facsimile:  (516)  432-7333

Admitted to Practice Law
in the State of New York

**November 12, 2004**

**Re:**  **In Re Michael N. Moroknek**
      **Moroknek v. Moroknek**
**File No.:**  **15-100**

**Invoice for Services: New Retainer August 4, 2004 through October 25, 2004**

| DATE | TIME (HOURS) | SERVICES RENDERED |
|---|---|---|
| August 9, 2004 | 0.2 hours *(DG)* | Letter to outgoing attorney's re: Change of attorney. |
| August 13, 2004 | 0.1 hours DIVORCE | Received and reviewed executed consent to change attorney. Telephone conversation without outgoing attorney for client re: upcoming deadlines. |
| August 18, 2004 | 0.2 hours DIVORCE | Drafted follow-up letter forwarding Consent to Change Attorney for M. Moroknek's divorce attorney. |
| August 19, 2004 | 0.1 hours DIVORCE | Telephone conversation with plaintiff's lawyer's office re: deposition date. |
| August 24, 2004 | 0.2 hours DIVORCE | Telephone conversation with client re: case status and upcoming EBT's. |
|  | 0.2 hours DIVORCE | Telephone conversation with defendant and Judge re: defendant's refusal to appeal with his client at the EBT. |

-1-

|  |  |  |
|---|---|---|
|  | 0.1 hours<br>DIVORCE | Received and reviewed faxed letter from husband's divorce attorney re: Attorney's inability to go forward with deposition. |
|  | 0.2 hours<br>DIVORCE | Drafted letter in response to husband's attorney's letter re: inability to go forward with EBT. |
| August 25, 2004 | 0.2 hours<br>BANKRUPTCY | Received and reviewed Notice of Hearing from Trustee seeking extension of time to file objection to Debtor discharge. |
| August 30, 2004 | 0.1 hours<br>BANKRUPTCY | Received and reviewed letter from Trustee re: adjournment of pre-trial conference from 10/4/04 to 10/20/04. |
|  | 0.1 hours<br>BANKRUPTCY | Received and reviewed letter from Trustee advising of Noticed EBT on 9/24/04. |
|  | 0.1 hours<br>DIVORCE | Received and reviewed Order from Judge DeMaro re: 9/3/04 appearance and outstanding discovery. |
| September 2, 2004 | 0.5 hours<br>DIVORCE | Prepared for Conference on 10/3/04 at Supreme Court of Nassau County. |
| September 3, 2004 | 2.2 hours<br>DIVORCE | Appeared at Supreme Court of Nassau County for conference. Case adjourned until 10/7/04. |
|  | 0.3 hours<br>BANKRUPTCY | Received and reviewed Debtor's Answer to our Complaint. |
| September 7, 2004 | 0.2 hours<br>BANKRUPTCY | Telephone Conversation with Judge's Clerk and Law Secretary regarding possible discovery telephone conference. |
|  | 0.8 hours<br>BANKRUPTCY | Drafted Notice of Discovery and Inspection for Trustee and served it on Trustee and Debtor along with cover letter. |
|  | 1.1. hours<br>DIVORCE | Reviewed copy of Michael Moroknek's client list provided by client. Reviewed copy |

# *** NOTICE***

These Exhibits have attachments which exceed twenty (20) pages.

Additional pages of the Exhibits were not attached but are available for viewing at the attorney's office.